UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| THE STATE OF SOUTH DAKOTA and THE SOUTH DAKOTA BOARD OF REGENTS *on behalf of* SOUTH DAKOTA STATE UNIVERSITY and THE UNIVERSITY OF SOUTH DAKOTA,<br><br>        Plaintiffs,<br><br>    vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>        Defendant. | 4:24-CV-04189-KES<br><br><br><br>ORDER GRANTING MOTION FOR REMAND |

Plaintiffs, the State of South Dakota and the South Dakota Board of Regents, filed this lawsuit in the Third Judicial Circuit Court in Brookings County, South Dakota. Docket 1-1. Defendant, the National Collegiate Athletic Association (NCAA), removed the case to this court. Docket 1. Plaintiffs filed a motion to remand the case to state court. Docket 4. Defendant resists the motion. Docket 9. Defendant also moved for a stay[1] while the parties waited for a Supreme Court ruling in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22

---

[1] Defendant also requested that the parties be given an opportunity to provide supplemental briefing regarding the impact of *Wullschleger II* on the motion for remand. Docket 13. Because the Supreme Court's decision in *Wullschleger II* is clear and plaintiffs argue for an immediate resolution to the motion for remand, *see* Docket 15 at 1 (providing that "[t]ime is of the essence"), the court finds that additional, supplemental pleading on the decision in *Wullschleger II* is not necessary for this court to resolve the pending motion for remand.

(2025) (*Wullschleger II*). Docket 13. For the reasons stated below, plaintiffs' motion for remand is granted and defendant's motion for a stay is denied as moot.[2]

## BACKGROUND

This lawsuit arose in response to three ongoing class action antitrust lawsuits[3] brought by collegiate athletes against the NCAA and the Power 4 collegiate athletic conferences (Big 10, Big 12, ACC, and SEC). Docket 5 at 1; Docket 11 ¶ 21. The athletes are challenging the NCAA's amateurism rule, which prevents collegiate athletes "from being paid to play or profiting from their name, image[,] or likeness (NIL) while participating in Division I athletics." Docket 5 at 1. The athletes sought past compensation for their athletic participation and injunctive relief to permit future athletes to receive profit from their NIL. Docket 11 ¶¶ 8-9. The NCAA has negotiated a $2.8 billion settlement with the plaintiffs in these three cases, *id.* ¶ 10, which the United States District Court for the Northern District of California has preliminarily approved, *see* Docket 10-1. The California District Court has also set a fairness hearing for April 7, 2025. Docket 5 at 2.

---

[2] Because the Supreme Court issued its decision in *Wullschleger II* on January 15, 2025, before the court ruled on defendant's motion for a stay, the court denies defendant's motion for stay as moot.

[3] The consolidated class actions are *House, et al. v. NCAA, et al.*, 4:20-cv-03919-CW; *Hubbard, et al. v. NCAA, et al.*, 4-23-cv-01593; and *Carter, et al. v. NCAA, et al.*, 4:23-cv-06325-RS.

As part of the settlement, $1.15 billion will be paid from the NCAA's reserves while the remaining $1.65 billion will be paid "by reducing disbursements [the NCAA] makes to conferences from its Final Four Men's basketball revenues by an average of 20 percent for the next ten years." Docket 5-1 at 1-2. Power 4 conferences "will pay 40 percent of the $1.6 billion and the remaining Division I conferences, none of which were named defendants in any of the three lawsuits, will pay 60 percent." *Id.* at 2.

In response, plaintiffs—as members of a non-Power 4 Conference—sued the NCAA in state court alleging that the NCAA violated its constitution, bylaws, and agreements with member colleges in adopting its damages allocation model. *See generally* Docket 1-1; Docket 11 ¶¶ 14, 19-20, 22. In its original complaint, plaintiffs brought the following six claims for relief: Counts 1 and 2—Breach of Contract; Count 3—Breach of Fiduciary Duties of Care and Loyalty; Count 4—Unjust Enrichment; Count 5—Derivative Action to Enforce Right of Members to Vote on Changes to NCAA Constitution; and Count 6—Derivative Action to Enforce Gender Equity. Docket 1-1 at 9-12. Plaintiffs alleged that because "[t]he NCAA's Constitution may only be amended upon a two-thirds vote of all delegates present and voting at the NCAA's annual Convention," *id.* ¶ 29, when the NCAA adopted the damages allocation model without receiving a two-thirds vote, the NCAA violated its constitution, bylaws, and rules, *id.* ¶¶ 43, 48.

On September 23, 2024, plaintiffs served a copy of the initial complaint upon defendant. Docket 1 ¶ 4. On October 9, 2024, defendant filed a notice of

removal with this court. *Id.* at 1. Defendant argued that removal to federal court was proper because federal question jurisdiction existed as "some of [p]laintiffs' state law claims implicate sufficiently significant federal issues." *Id.* ¶¶ 1-2. Defendant argued that plaintiffs' claims raised a federal issue because the claims "are directly attacking a class action settlement" currently pending before a federal court. *Id.* ¶ 3. Defendant later argued that plaintiffs' Count 6— Derivative Action to Enforce Gender Equity, involved a substantial, disputed federal issue that justified the finding that federal question jurisdiction existed. Docket 9 at 7-8.

On October 15, 2024, plaintiffs filed a motion for remand, Docket 4, arguing that remand is proper because no federal question jurisdiction exists, Docket 5 at 3-5. Plaintiffs argued that its complaint did "not directly attack or seek to enjoin the NCAA from entering the California settlement[,]" but sought "only to compel the NCAA to perform its obligation to South Dakota . . . under its rules, bylaws[,] and constitution and to enjoin the NCAA from allocating an unjust proportion of the settlement to South Dakota." *Id.* at 5. Plaintiffs later filed an amended complaint on November 15, 2024. Docket 11. In the amended complaint, plaintiffs dropped Count 6 but re-alleged the other five claims. *Id.* at 7-11.

In response, defendant moved for a stay of plaintiffs' motion for remand. Docket 13. In its motion, defendant argued that a stay was proper because, at the time, the parties were waiting on a decision from the Supreme Court concerning an Eighth Circuit decision in *Wullschleger v. Royal Canin U.S.A.,*

4

*Inc.*, 75 F.4th 918 (8th Cir. 2023) (*Wullschleger I*). *Id.* In *Wullschleger I*, the Eighth Circuit held that the post-removal amendment of a complaint to remove all claims invoking federal question jurisdiction deprived a federal district court of supplemental jurisdiction over any remaining state-law claims. *Wullschleger I*, 75 F.4th at 924. Defendant argued that plaintiffs' removal of Count 6 in their amended complaint should not deprive this court of federal question jurisdiction. Docket 14 at 2-3. And, because this issue could be directly resolved by the Supreme Court, this court should grant a stay. *Id.* at 4-5. On January 15, 2025, the Supreme Court issued its decision upholding the Eighth Circuit's ruling. *See Wullschleger II*, 604 U.S. at 25-26.

## LEGAL STANDARD

A defendant may remove a state court civil action to federal court under 28 U.S.C. § 1441(a) if the case "originally could have been filed there." *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014) (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010)). Such original jurisdiction exists where the court has federal question jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Known as the well-pleaded complaint rule, it "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

5

At the same time, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983). There are two exceptions to the well-pleaded complaint rule. *See Minn. by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 709 (8th Cir. 2023). Removal may be proper where a state-law claim "(1) [is] completely preempted by federal law[,] or (2) necessarily raise[s] a substantial, disputed federal question." *Id.* "If either exception is met, the case is removable although no federal question appears on the face of the complaint." *Id.* A complaint that falls under the second exception includes "claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As such, federal question jurisdiction will exist "if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The removing defendant bears the burden of proving that removal was proper, and that federal subject matter jurisdiction exists. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Further, defendants are "not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000). "Federal courts are to 'resolve all doubts about federal jurisdiction in favor of remand' and are strictly

to construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quoting *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)).

## DISCUSSION

Plaintiffs argue that remand is proper because their amended complaint only contains state-law claims that do not involve a substantial, disputed federal issue. Docket 5 at 3-5; Docket 12 at 5. Plaintiffs argue that the only questions raised by their amended complaint—whether they are "entitled to vote on the damages allocation model and settlement—are purely matters of interpretation of the NCAA's constitution, bylaws[,] and agreements." Docket 12 at 5. Plaintiffs further argue that their amended complaint does not seek to undo the settlement itself, but rather, only attacks how the NCAA proposes to pay for the settlement.[4] *Id.* Plaintiffs conclude that because no federal question exists on the face of the amended complaint, the case must be remanded back to state court. *Id.*

In support of this conclusion, plaintiffs cite to the United States District Court of the Northern District of California's reasoning in denying Houston Christian University's (HCU)—a non-Power 4 college participating in Division I athletics—motion to intervene in the settlement process. Docket 5 at 4-5. There, HCU argued that it should be allowed to intervene in the settlement

---

[4] As plaintiffs explain, the NCAA's proposed damages allocation model is a "division dominant provision," which, according to the NCAA's constitution and bylaws, can only be changed by a two-thirds majority vote of Division I members. Docket 12 at 3-4.

process because the NCAA failed to abide by its constitution, bylaws, and rules in adopting the settlement. Docket 5-2 at 2, 6. HCU argued that because the NCAA failed to follow its constitution, bylaws, and rules, its proposed settlement with class plaintiffs was invalid. *Id.* at 6. The district court denied HCU's motion for permissive intervention because "HCU has not demonstrated that [the district court] has jurisdiction to adjudicate disputes about whether the NCAA's actions violate its own constitution, bylaws, and rules" or that its claim "has a question of law or a question of fact in common with this action, which is based on alleged violations of Section 1 of the Sherman Act." *Id.* Plaintiffs argue that the California district court's decision "makes clear that the disproportionate financial impact of the settlement on certain NCAA members is not its concern." Docket 5 at 4. And plaintiffs argue that the California district court's decision reflects that the claims plaintiffs now bring do not implicate significant federal interests. *Id.*

In response to plaintiffs' motion for remand, defendant alleges that federal question jurisdiction exists because plaintiffs' lawsuit "is a vehicle to challenge a federal settlement of federal[-]law claims." Docket 9 at 7-8. In its response, defendant heavily relies on explaining how Count 6 of plaintiffs' original complaint constitutes a substantial, disputed federal issue which makes removal proper. *Id.* at 8-18 ("Count 6, which focuses on division of the settlement proceeds among class members . . . creates federal question jurisdiction."). But plaintiffs amended their complaint and dropped Count 6. As the Supreme Court recently decided, if "the plaintiff eliminates the federal-law

claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Wullschleger II*, 604 U.S. at 49. Further, because an amended complaint "become[s] the operative one," *id.* at 50, the court will not address defendant's arguments as to Count 6 because Count 6 cannot be used to establish federal question jurisdiction, *see id.*

Instead, the court will examine whether any of the other five claims for relief raised in plaintiffs' amended complaint are state-law claims that "turn on substantial questions of federal law." *Grable*, 545 U.S. at 312. The remaining claims include two counts for breach of conduct and claims for a breach of the NCAA's fiduciary duties of care and loyalty, unjust enrichment, and a derivative action seeking enforcement of NCAA membership rights. Docket 11 at 7-11. The court agrees with plaintiffs that its claims invoking "questions of interpretation of the NCAA's constitution, bylaws[,] and agreements among members" are questions under state, and not federal, law. Docket 12 at 4. As such, it is the defendant's burden to show that these state-law claims involve a substantial, disputed issue of federal law. *See In re Bus. Men's Assurance*, 992 F.2d at 183.

To show that federal question jurisdiction exists, defendant must show that at least one of the plaintiffs' claims includes "a federal issue [that] is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "A federal issue is necessarily raised when it 'is a *necessary* element of one of the well-pleaded state claims' in

9

the plaintiff's complaint." *Minn. by Ellison*, 63 F.4th at 711 (quoting *Franchise*

*Tax Bd.*, 463 U.S. at 13).

Here, the court finds that plaintiffs' claims do not raise an issue of

federal law. While defendant contends that the "equitable division of settlement

proceeds among class members raises a question of federal law" under Rule

23(e), Docket 9 at 10, plaintiffs' remaining five claims do not raise this issue.

Instead, plaintiffs' claims focus on the settlement's unfairness to non-Power 4

colleges in the NCAA, *see* Docket 11 at 7-11, which the California District

Court has already determined is not an issue to address during approval of a

federal settlement, *see* Docket 5-2 at 6 (reasoning that "HCU has not

demonstrated that this [c]ourt has jurisdiction to adjudicate disputes about

whether the NCAA's actions violate its own constitution, bylaws, and rules" in

evaluating the validity of the proposed settlement). While Rule 23(e)(2) requires

that the court determine if the settlement is "fair, reasonable and adequate[,]"

Fed. R. Civ. P. 23(e)(2), in making this determination, the court must look at

whether "the proposal treats the class members equitably relative to each

other[,]" Fed. R. Civ. P. 23(e)(2)(D). This factor does not implicate the claims

plaintiffs bring, which challenge "how the NCAA comes up with the money to

pay the settlement or how it allocates shares of the damages among its

members." Docket 5 at 4. For these reasons, the court finds that resolution of

the merits of plaintiffs' state-law claims does not require the court to resolve

any questions governed by federal law.

The court's finding is bolstered by the California District Court's own analysis in denying HCU's motion for permissive intervention. In denying HCU's motion, the district court explained that HCU's claim—that the "settlement agreement is void because it violates 'the NCAA's constitution, bylaws, and rules,' "—does not establish an "independent ground for jurisdiction" or share a common question of law or fact with the pending action. Docket 5-2 at 6. Because plaintiffs raise similar state-law claims in their amended complaint, *see* Docket 11 at 7-11, in the absence of a claim that necessarily raises a substantial, federal issue, the court finds that it is without federal question jurisdiction.

The court also rejects defendant's argument that because the original class action was premised on federal antitrust claims under the Sherman Antitrust Act, challenges to the settlement must be brought in federal court. *See* Docket 9 at 13-14. In instances where suits are brought to challenge the enforcement of a settlement reached in federal court, in the absence of either a provision entitling a federal court to retain jurisdiction or an independent claim arising under federal law, a federal court does not have federal question jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."); *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006) ("[A] district court does not have jurisdiction to enforce a settlement agreement

11

merely because the agreement was the premise of the court's dismissal of the [federal] suit that the agreement settled."); *Long v. Madigan*, 869 F. Supp. 720, 723 (D. Minn. 1994) ("[D]espite the finalization of a settlement of a Federal cause of action, the enforcement of that action is properly subject to the plenary powers of the State Courts to entertain actions based upon a contract."). Because a dispute concerning a settlement agreement's terms is a dispute under state contract law, *see Kokkonen*, 511 U.S. at 378, the mere fact that the class action is premised upon federal antitrust law cannot be used as a vehicle to establish federal question jurisdiction in this case. While the settlement in this case has not yet been finalized, in conjunction with the California District Court's determination that claims similar to plaintiffs' do not establish an independent ground for jurisdiction and the cases cited above, the court finds that it does not have federal question jurisdiction. In such a case, remand is proper.

## CONCLUSION

Based on the foregoing, it is

ORDERED that plaintiffs' motion for remand (Docket 4) is granted.

DATED March 28, 2025.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE